May it please the court, fellow counsel, and the clerk. Don Snavely, appearing pro se for one of the appellants. This case revolves around a representation agreement out of a class action in which I and my co-counsel Sullivan Fern represented the class plaintiffs who ultimately filed bankruptcy in the course of the proceedings and we ended up in a fight with the bankruptcy trustee as to whether the claims in this case belong to the bankruptcy estate or if our representation agreement was enforceable against the bankruptcy estate. Look to me as though your representation agreement had you representing them only in the event that this was a class action. I don't believe that's the case, your honor. If you look at paragraph seven, certainly the the legal fee says on paragraph seven. Now, where are you in the excerpt so I can find one appendix one twenty seven of my initial excerpts of record one twenty seven. It starts on one point. Page one twenty seven. Yes, sir. That's the one that says you understand that as attorneys for the class. No, no. We have a lien against all claims, the cause of action in the case. Correct. Correct. All claims. Yes. But as attorneys for the class. Well, that's the thing about his attorneys for Wilbur's. Of course, the Wilbur's gave up the right to take positions contrary. You have to understand the point. They gave up the position to take a position contrary as individuals to the claims of the class. Correct. And you represented them as representatives of the class. And yes, that's true. We did not as individuals in their claims because they gave those claims up. But if you condition of your contract or they didn't, they gave them up for the benefit, in effect, put them into a trust. So they could not obtain benefit for themselves. I think that's very inventive. But when I study trust, we had several elements of a trust. And the first thing was that there would be a trust store who took a race and put it in the trust. And that was called Seneca. Now, what is the race that is put in trust here? The claims, their individual claims represented in the class action. We're in anything that has been signed by Wilbur's. Is there any indication that they are putting a their individual claims into a trust for your benefit? Well, it's for the class's benefit. Women that that can't be right. There are two things going on here. One of them is a class action. And the other one's the Wilbur's claim itself, individual claim. And I thought you just said that they set up a trust for their individual claim. And now you said for the class's benefit. Oh, no, I'm sorry if I misspoke. They took their individual claims and agreed that they would only serve them for the benefit of the class. And the agreement clearly says you cannot get any benefit with the class members don't get as a class representative. You can't be in a conflicting position where your personal interests may run against the interests of the class members. And that's what we were trying to protect that where they would not say it. And I've done several of these where they say we'll try to buy the class representative out for an exorbitant amount of money, but get to get them out. And I say you can't be in that position. You must represent the interests of the class. You cannot take a position. Now, this may be a little bit off to the one side of what's immediately in front of us in this case. But what happens if it turns out that the class member, the named class representative or named would be class representative, as you get further along into the case, turns out to have a very strong individual claim, probably is not a very good class representation and class representative. You've had that person sign away what seemed to me quite valuable rights. Maybe they didn't even know what those rights were at the time they signed them away. Well, of course, that didn't exist here because they had a more general. If it happened, then if they had a conflict arose, I would go to the court, the federal district court and say, I have this conflict arising. I either need to get a class, another class member that doesn't have the conflict or please instruct me what to do if there's a conflict. And in fact, there's a paragraph that talks about we may need to get another class representative if that situation becomes necessary. Then you consent to that happening. And we try to do that, by the way, in the class. That's the page one twenty seven sub paragraph B. It may become necessary to join additional plaintiffs. But it turns out, of course, in this case, the class was never certified. Correct. That was the order of the district court, which we were a modern appeal. It never got to that point. In other words, what I said is correct. The class is not certified. So all we have left is an individual claim. And it seems to me that this retainer agreement assumes that you are representing the class. And it says nothing about your individual representation of them as individuals. Well, throughout it, it talks about the first sentence says such terms of our agreement to represent you. It is the first sentence. And it says in paragraph one on page one, twenty five of the excerpt, the firms of Sullivan, Tagore and Schnabel law firm will represent you. You skipped something. Will represent you, comma, as class plaintiffs, comma. Correct. Yeah. All right. And then on paragraph five, as attorneys for the class, we will be entitled to a portion of any settlement or judgment process. Got it. Seems to me the entire premise of the agreement is we're representing the class. And so long as you are a named representative of the class, then the you follows. But if it's you who is not a class representative and there's no class certification, this agreement doesn't seem to have any applicability whatsoever. Well, then look at paragraph on page one, twenty eight, paragraph seven. One justice read part of it. It says you cannot settle your claims or any of the class claims without first payments. Attorney's fees very clearly states that their claims were subject to the contingent fee. Well, wait a minute. I'll start at the beginning of paragraph seven, which has two sentences. The first sentence is you understand that as attorneys for the class, we have a lien against. The second sentence is, as it were, a gloss on the first. The second sentence begins, this means that. So we're explaining what it means to be attorneys for the class. But the lien is still against all claims, your claims and the class claims. Understand that their individual claims had been suppressed to the interest of the class. They didn't have a conflict of interest with the class. That is the way you have to prosecute a class action unless you because the defense will come after you find established that they have this. Whether or not you properly ask them to forego their individual claims is not in front of us. The question is whether now having no class at all in front of us because the district court refused to certify the class, whether you're entitled to any portion of fees for their individual claims. And I find no way of reading this agreement to say that you are entitled to fees for them when they are not members or representatives of the class. I unless you can point me to other language than you've so far pointed, I can't get there from here. Well, it's look at paragraph eight. You understand that. Well, that covers our agreement to represent you and the class. In this case, we could keep talking about them and the class. OK. In this case. But but the language in paragraph seven couldn't be clear. It says you cannot settle your claims or the class claims while paying us first. How can you avoid that language and say that the the workers are going to settle their claims and not pay us? And how can you possibly avoid running into that language? Well, because it says you can't do it. I think you did a belt and suspenders because you already obliged them to forego, quote, your claims. They had no claims to settle based on the agreement you made them sign. They had claims to settle. They had to settle it for the benefit of the class. They didn't lose all the rights. They have a right to a pro rata share of a settlement as a plus a premium. OK, but if that's true and I understand that and agree with that, that plays into the argument that they have a pro rata claim, but this has members of the class and the class doesn't exist. Well, let me address that. There was a class in this case. The court just didn't certify it. There was actually payments to some members of the class, which we thought was strange that the court wouldn't certify one hundred twenty five members and actually pay him some money. But it's just not like this was a totally failed class action. It was a it was a standing requirement that we disagreed with the judge on. The judge thought that they didn't have standing because their use of the residence immediately after they bought it was not very personal. The purpose was they sold their old residence and moved into it in six months. But he didn't look at the purpose of the language. The language of the statute said the purpose. He said, well, the use at the time you did it. I do have one problem with your trust theory that they put in trust. Their claim. You use language of trust in paragraph three, page one, twenty five. Yes. You say you are fiduciary. That means the Wilbur's. You are fiduciaries who owe duties to the entire class of plaintiffs. So that's trust language for judiciary. But the only time you use that language is with respect of the duties they owe to the class. Not a word about placing your claims in trust for the class. I guess it's to me that seems like it's encompassed within that if you owe fiduciary duties and it's it talks about you cannot the next sentence fiduciary duties are that you can't settle without court approval and you can't take positions inconsistent, et cetera, et cetera. But it doesn't say anything about taking a valuable asset to with the individual claim and putting it in trust for the benefit of not only the class, but of Snavely. Well, when you say Snavely, well, the attorneys who got paid class benefit and there was some benefit here. It says normally you take any action which works to the detriment of the class to your personal benefit of the class. It does work in a detriment. Their class is getting zero. Your theory is that they put their individual claims in trust for the benefit of Snavely. No, that's not my theory for the benefit of the class, the punitive class. Well, then you don't have any standing to the class has no standing to get to get fees for you. And you have no standing to to claim for the class. Well, our our claim is derivative of the class claim. We have a contingent. We have a right to be paid for. If we get compensation for the class, we have a right to be paid according to the discretion. So what you're saying is that the fee that you're after will go to the class. The total sum, the seventy five thousand should go to the class and the district court within. We could make an application for a fee and then the district court can say put do a side prey distribution. The class is so huge that the balance of the money wouldn't it's insignificant. We oppose this settlement, but we had no client to. If anything goes to the class, the mailing of it will lead up to the settlement. Right. Well, it will. But by the same token, particularly in this in this era of mortgage crisis, they could the court could donate it to some consumer organization to protect mortgage borrowers. There's money that could be used for that purpose. I don't know. So we've taken you over time with our questions. Why don't we hear from the other side and then we'll give you a minute, even though you are over. Thank you. Thank you. May it please the court. My name is Steve Johnson. I represent the trustee, Mr. Shane, in this case. Your Honor, the law of the land and law of the circuit is that after the denial of the class certification, that the class representative may and may settle his individual claims. And without court approval, it's the case of this circuit, Alaska versus a suburban gas propane corporation. That holds that after denial of the class are only the individual claims left. And the class representative can settle those. There's a U.S. Supreme Court case, United Airlines versus McDonald's to the same effect. In this case, the district court held that the language of the retention agreement, the district court said it was inclined to hold that the retention agreement provided that the appellants in this case, the attorneys on the other side were entitled to a contingency fee only if there had been a class certified. There was no class certified. There was no class action. And the express language of the retention agreement appears to say the same thing. There's paragraph eight of the retention agreement that states, that provides that the appellants do not represent the debtors, the Wilbers, individually. That's a very express provision. The retention agreement, quotes, does not cover any services we may provide to you personally. That's part of that retention agreement. It carves out any individual representation of the personal claims of the Wilbers. Paragraph 3D of the retention agreement provides that the Wilbers could not pursue their personal claims if a class is certified. That's a conditional waiver, if you will, of the Wilbers' personal or individual claims. The class was never certified, so that condition was never fulfilled. And that's where we kick into the law of the land, the law of the circuit, that when a class is not certified, individual claims can be settled. The case of the Ninth Circuit is Alaska v. Suburban Propane Gas Corporation. That's 123 Fed 1317 saying that. The bankruptcy court also held in denying the proofs of claims of the appellants that the retention agreement provided that clearly it was limited by its own terms to the appellants' representation of the Wilbers as class representatives. The bankruptcy court, somewhat differently than the district court, held that it was ambiguous as to the Wilbers' individual claims. However, the bankruptcy court went on to construe the intent of the parties to the retention agreement by looking at the appellants' own statements on the record and own judicial admissions, if you will, and properly construed the retention agreement against the appellants. Appeal, is our scope of review de novo as to that determination? Your Honor, facts, factual findings of the bankruptcy court, it's on the clearly erroneous standard as to matters of law. I believe it would be de novo. Well, isn't the interpretation of a written contract a matter of law? As to whether there's an ambiguity, it's a matter of law, Your Honor. That's correct. But when there's an ambiguity, then it becomes a factual question as to whether the bankruptcy court correctly found the expressed intent of the parties? Yes, Your Honor. And that is clear error? That's clear error, correct, Your Honor. That's how I see it, the law of the case. Federal bankruptcy procedure 8013 says that the bankruptcy judge's findings shall be not set aside unless clearly erroneous. And it's well-settled case law that where there are two permissible views of the evidence, that the fact finder's choice between them cannot be clearly erroneous. And here clearly there was evidence in the records, the admissions, the statements of counsel, that is of the appellants, to the effect that they never intended to represent the Wilbers individually. And the bankruptcy court's order lists those claims or those statements on the record. For example, Appellant Rhodes stated that it was understood from the beginning that the same case would not be prosecuted if the class claims were not certified. That was stated in supplemental excerpt to record, page 3, in the debtor's motion to compel abandonment from the bankruptcy court back in 2003. Mr. Snevely filed an affidavit in opposition to the trustee's objections to the proofs of claims filed by the appellants, stating that we never discussed or anticipated what might happen if ultimately the case was not certified after all appeals were exhausted. That's excerpt to record, page 152. And then also Mr. Snevely, in his response to the trustee's objection to his proof of claim, at supplemental excerpt to record, page 124, stated that Sullivan, Tabarachian, Rhodes, and Mr. Snevely, the appellants in this case, have never claimed that they represented the Wilbers individually. So the bankruptcy court relied on those admissions, those statements. The fact of the matter is the Wilbers got $75,000, the Wilbers trustee got $75,000, which is a pretty healthy settlement for an individual claim. Had they not had the class action pending, do you think they would have gotten that $75,000? That's somewhat speculative, Your Honor, but the statements of the appellants before the district court in opposition to a previous offer of $75,000 to the Wilbers was to the effect that the claim is easily worth, the individual claims of the Wilbers is easily worth six figures. And the appellants in that filing before the district court stated that the Wilbers had individual claims for emotional distress as well as out-of-pocket expenses, that the emotional distress damages would come to $100,000 or more. And so by the appellants' own words to the district court, the individual claims were worth more than $75,000. Was the settlement of $75,000 reached after the class, after it was clear that there was never going to be a class certification? Yes, Your Honor, the settlement was proposed. There was a $75,000 offer made before then, I believe, but it was only after the class certification had been denied. The class certification was originally denied in 2002. The appellants filed a motion for reconsideration. The district court decided and denied the motion for reconsideration on June 16, 2004, and at that time allowed the trustee to be substituted in as a real party in interest. Thereafter, the offer was made by the defendants in the failed class action to settle the individual claims of the Wilbers for $75,000. And then the trustee took that before the bankruptcy court in the spring of 2005, and it was ultimately approved after the appellants withdrew their objections. Now, this may not make any difference to the decision of the questioner in front of us, but does any portion of that $75,000 go to the Wilbers, or is it entirely eaten up by the estate? It all goes to the estate, Your Honor, and not to the Wilbers. And the payout from the estate then goes to other people? There's no residuum that comes back to the Wilbers? No, none at all. Their claims will exceed, the creditors exceed $500,000. So this is the only way the bankruptcy estate is going to be funded. That's all there is to distribute to creditors, Your Honor. The retention agreement is not an express trust. As the district court found, it's a retention agreement. A retention agreement is of a fundamentally different character than an express trust. There's no language of a trust, specifically putting any sort of race or corpus into trust, no designation of beneficiaries. Arguably, one could say that putative class members might be beneficiaries, but that never came to be. So the trust fails for lack of a beneficiary. The district court found there was no express language that would show an intention to create a trust. Certainly, Deborah Wilber's affidavit that's in the record, exception of record, does not ever state that it was explained that the retention agreement was a trust, that she was a trustee, although she goes to great lengths to explain what her understanding of the retention agreement was. The retention agreement, even if it were construed as a trust, would not fall as an exception under Section 541C2 to property of the estate. That exception is, I believe, reserved for traditional spin-thrift trusts under state law. Rather, the retention agreement would fall under 541C1A as a classic self-settled trust, which is expressed under that provision of the bankruptcy code, 541C1A, not considered to be a trust exception to the property of the bankruptcy estate. As I say, I'm out of time. Thank you very much for your argument. Thank you. We took you over last time. We'll give you a minute. Thank you. I guess the main point I want to make is what the bankruptcy court wanted to do once they found an ambiguity, it wanted to then go to the general law on class actions. We have affidavits in the record from the Wilbers and myself that resolve any kind of ambiguity where they state, Mrs. Wilbers states, that we could never obtain any benefit from the class action. It wasn't available to all members. We couldn't obtain anything without paying the attorneys. That's the law. When you have an ambiguity, you go to the parties that made the contract. And what happened here is they saw an opportunity down the road, despite this commitment, to now back out. So if you relieve them from this commitment, I think you're going to make some very bad class action law because now these class representatives can say no matter what we sign, if at some point we decide we don't like it, we back out. But listen, you're at perfect liberty to rewrite the contract and say, in the event there's no class certified, then the following happens. That's not what you wrote here. Well, it does say that we'd get our fees from their claims or the class claims. And it does say that, and the affidavits say that they could never get any benefit as a contract. We understand the argument, but I think if you want to prevail next time around, you better write a different contract. And the other thing about a trust, Montana laws. Your time is up. All right, thank you. Thank you very much. Thank you both for your helpful arguments. In the case of Wilbur et al., Risa Desheen is now submitted for decision.
judges: Thompson, Fletcher, Bea